IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CALBERT NICHOLAS MATHEWS, ) | |
| ) | |
| Plaintiff, ) | Case No. 7:20-cv-00712 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| TRISH MCCOY, *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendants. ) | |

Plaintiff Calbert Nicholas Mathews ("Plaintiff"), a Virginia inmate proceeding *pro se*, brings this civil rights action under 42 U.S.C. § 1983 against Defendants Capt. Trish McCoy, Lt. Daniel Edwards,[1] and Correctional Officers Brandon Fleming, Forrest Sparrow, Antony Vies, Kenneth Turner, and Sunny Patterson (collectively "Defendants"). Plaintiff alleges that, while housed at Haysi Regional Jail ("Haysi") in Haysi, Virginia, Defendants threatened him and used excessive force in response to a window-covering incident. Plaintiff also alleges that Capt. McCoy failed to keep him safe from "staff" at the jail. Defendants have moved to dismiss for failure to state a claim. For the reasons discussed below, the court will grant Defendants' motion in part. Although Plaintiff has failed to state a claim relating to threats or a failure to keep him safe, he has plausibly alleged a cause of action for the use of excessive force. That claim will proceed against Defendants Fleming, Sparrow, and Edwards.

---

[1] Plaintiff's pleadings spell this name as "Dannel Ewards," but Defendants' pleadings refer to him as "Daniel Edwards." The court will use Lt. Edwards's spelling of his own name.

## I.

The facts are taken from Plaintiff's *pro se* complaint and, at this stage, are presumed to be true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In Plaintiff's second amended complaint, he alleges that on August 26, 2019, while he was housed at Haysi, Lt. Edwards told him "that he was not going to put up with [Plaintiff's] n****r shit at his jail and that he would pay someone to hurt [Plaintiff]." (Second Am. Compl. 2 ¶ E.1 [ECF No. 19].) Plaintiff claims he filed a grievance related to this issue. In response, Plaintiff was told that Capt. McCoy was investigating his allegations and that, if his claims were corroborated, the violation would be addressed with the offending officer; Plaintiff would not be informed of the findings. (*Id.* at 3.) He further alleges that "Captain McCoy failed to keep Lt. D. Edwards away from [him] and she failed to keep [him] safe and still lets [Lt. Edwards] work in the same housing" that Plaintiff lives in. (*Id.*)

Plaintiff also alleges that, on October 14, 2019, Turner escorted an inmate back from "medical" to the 5A pod. (*Id.* at 2 ¶ E.2.) Plaintiff alleges that, instead of returning the inmate to his cell on the top tier, Turner simply returned the inmate to the pod. (*Id.* at 4.) Once inside, the inmate approached Plaintiff, told him he "would have to pay to live in the pod," and then the two (and two other inmates) "got to fighting." (*Id.*) Plaintiff says that, while Turner was trying to break up the fight, Plaintiff struck him several times. At that point, Fleming and Sparrow arrived to break up the fight. (*Id.*)

After the fight was over, Plaintiff alleges that Sparrow and Vies took him to medical. At some point, Fleming apparently came to medical and told Plaintiff he "was going to make [his] life hell for hitting one of [Fleming's] officers." (*Id.*) Plaintiff asked to see Capt. McCoy,

but Fleming said no one was going to get Capt. McCoy for him. Plaintiff told Fleming to get away from his door, but Fleming refused. In response, Plaintiff says he covered his window.

At that point, Plaintiff alleges that Fleming, Sparrow, and Patterson made entry into his cell "with O/C spray and the shieled [*sic*] . . . ."[2] (*Id.*) Plaintiff claims that Fleming deployed the OC spray while Plaintiff "was laying on the shower floor," then Patterson "placed the shieled [*sic*] on [Plaintiff's] back [while he] was wet from the shower and laying on the shower floor." (*Id.*) Patterson then "activated the shield" and Plaintiff was placed in a restraint chair. (*Id.*)

Plaintiff characterizes the officers' actions as excessive force and requests $900,000 and "[their] jobs" in damages. (*Id.* at 2 ¶ F.) The matter is now before the court on Defendants' motion to dismiss.

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94

---

[2] "OC spray is a chemical agent similar to what is commonly known as pepper spray or mace and irritates a person's eyes, throat, and nose." *Hines v. Barksdale*, No. 7:17-cv-00077, 2018 WL 3148126, at *1 n.1 (W.D. Va. June 27, 2018). *See, e.g.*, *Park v. Shiflett*, 250 F.3d 843, 849 (4th Cir. 2001) (describing the physiological effects of OC spray). It is unclear from Plaintiff's complaint what the "shield" is, but given Plaintiff's characterization that it was "activated" against his back, the court presumes it is a "shock shield." "The 'shock shield' is a long, narrow piece of Plexiglas-like material that can discharge an electric current across its center." *Wilson v. Tincher*, No. 7:15cv134, 2016 U.S. Dist. LEXIS 19649, at * 11 (W.D. Va. Feb. 18, 2016).

(2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.*; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*,

517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

## III.

Plaintiff filed his second amended complaint on a form document provided by the court "[f]or use by inmates filing a complaint under CIVIL RIGHTS ACT, 42 U.S.C. § 1983 . . . ," so the court assumes that Plaintiff intended to assert his causes of action under that statute. (*See* Second Am. Compl. pg. 1.) Section 1983 creates a private cause of action against anyone who,

> under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983. To state a cause of action under § 1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States, and that the deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Plaintiff's complaint asserts two distinct claims: that Lt. Edwards threatened him and told him he would pay someone to hurt him (Count I), and excessive force in response to the window-covering incident (Count II). Related to Count I, Plaintiff alleges that Capt. McCoy failed to "keep [Plaintiff] safe from her staff." (Second Am. Compl. 1 ¶ D.1.) The court will address the claims in turn.

**A.**

Insofar as Plaintiff asserts that Edwards violated his rights by threatening to pay someone to hurt him, his allegations are insufficient to state a claim. "Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983." *Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005). *See also Mullins v. Clear*, No. 7:21cv008, 2021 WL 5299665, at *4 (W.D. Va. Nov. 15, 2021); *Firewalker-Fields v. Hill*, No. 1:19cv626, 2021 WL 3216464, at *3 (E.D. Va. July 28, 2021); *Bratcher v. Mathena*, No. 7:15cv500, 2016 WL 4250500, at *1 (W.D. Va. Aug. 10, 2016) (finding no claim was stated where plaintiff alleged the defendant "'approached plaintiff's cell . . . carrying a large canister of O.C. gas used for resistant offenders,' 'entered plaintiff's cell, searching it,' and 'began making threats to assault plaintiff.'"). Vitally important to the court's conclusion is that fact that, despite the allegation that Edwards threatened to have some harm come to Plaintiff, Plaintiff *does not allege* that Edwards ever acted on those threats. In the absence of more, Plaintiff's allegations are insufficient to state a claim.

Relatedly, Plaintiff alleges that Capt. McCoy "failed to keep Lt. D. Edwards away from [him] and she failed to keep [him] safe and still lets [Lt. Edwards] work in the same housing" where Plaintiff lives. (Second Am. Compl. 3.) Presumably, Plaintiff contends that, as a supervisor, Capt. McCoy had an obligation to protect Plaintiff from Lt. Edwards (or other officers). Three elements are necessary to establish supervisory liability under § 1983:

> (1) that the supervisor had actual or constructive knowledge that [her] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that

- 6 -

> there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Plaintiff's allegations do not satisfy any of these elements.

As a preliminary matter, as discussed above, Lt. Edwards's comments to Plaintiff—if he actually said them—were unprofessional and offensive but did not rise to the level of a constitutional violation. Because his actions did not amount to a constitutional injury, Capt. McCoy cannot be faulted under § 1983 for failing to respond to them. "A supervisor cannot be held liable absent a constitutional violation by the people she supervised." *Chennault v. Mitchell*, 923 F. Supp. 2d 765, 787 (E.D. Va. 2013) (citing *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986)).

But even if there was some underlying constitutional violation inherent in Lt. Edwards's words, Plaintiff has failed to allege that Capt. McCoy was aware of them. By his own allegations, Plaintiff he alleges he informed Capt. McCoy of Lt. Edwards's conduct *after* the fact. Accordingly, Plaintiff does not allege the first element—that Capt. McCoy had knowledge that her subordinate "*was* engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to" Plaintiff. *Shaw*, 13 F.3d at 799 (emphasis added). As to the second element, Plaintiff alleges that Capt. McCoy investigated his complaint, which does not evince "deliberate indifference to or tacit authorization of" Lt. Edwards's actions. *Id.* Finally, because Plaintiff did not suffer *any* constitutional injury, there is no causal link alleged between Capt. McCoy's inaction and the non-existent constitutional injury.

For these reasons, Defendants' motion to dismiss will be granted as to Count I.

**B.**

The Eighth Amendment to the U.S. Constitution prohibits cruel and unusual punishment; "[a]fter incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment" in violation of the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (cleaned up). "To prove an excessive force claim, an inmate must satisfy not only [a] subjective component (that the correctional officers acted with a sufficiently culpable state of mind), but also [an] objective component (that his alleged injury was sufficiently serious in relation to the need for force) to establish constitutionally excessive force." *Riddick v. Kiser*, No. 7:20cv096, 2021 WL 4453667, at *8 (W.D. Va. Sept. 29, 2021) (citing *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998)). "An injury is sufficiently serious for purposes of the objective component of an Eighth Amendment excessive force claim as long as it rises above the level of de minimus harm." *Iko v. Shreve*, 535 F. 3d 225, 238 (4th Cir. 2008) (citing *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992)). In any event, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.

Here, Plaintiff alleges that Fleming told him he was going to make Plaintiff's life "hell" at Haysi, and then proceeded (along with others) to invade his cell, deploy OC spray, and "activate[]" the shield in Plaintiff's back while he lay wet on the shower floor—all because Plaintiff covered his window. (Second Am. Compl. 2.) Fleming's statement—that he was going to make Plaintiff's life "hell"—adequately alleges a "sufficiently culpable state of mind" at this stage of the proceedings. (*Id.*)

As to the second element, although Plaintiff does not allege that he was injured during this encounter, "[t]he absence of significant injury alone is not dispositive of a claim of excessive force." *Washington v. Rounds*, 223 F. Supp. 3d 452, 461 (D. Md. 2016) (citing *Wilkins v. Gaddy*, 559 U.S. 34, 36–39 (2010)). "It is the nature of force used by the correctional officer, rather than the extent of the prison inmate's injury, that is the relevant inquiry in an Eighth Amendment claim." *Id.* (citing *Hill v. Crum*, 727 F.3d 312, 320–21 (4th Cir. 2013)). "Not every malevolent touch by a prison guard, however, gives rise to a federal cause of action for excessive force in violation of the Eighth Amendment's prohibition of cruel and unusual punishment." *Id.* (citing *Wilkins*, 559 U.S. at 37).

Plaintiff alleges that, after Fleming told Plaintiff he was going to make his life "hell" for striking an officer, Plaintiff covered his cell window. He then alleges that officers made entry—without warning and apparently while he was showering or shortly after he finished—and deployed OC spray and "activated" the shield in his back while he lay wet (and presumably naked) on the floor. Defendants argue that the force was in response to Plaintiff's refusal to uncover his cell window; in other words, no more force than was necessary to restore order. (*See* Mem. in Supp. of Defs.' Mot. to Dismiss pg. 10, June 6, 2021 [ECF No. 33].) But the court is not prepared to say that, as a matter of law, the force alleged was a constitutionally permissible response to Plaintiff's alleged actions. When coupled with the allegation that the force was deployed in tandem with a threat to do harm against Plaintiff in retaliation for his role in a fight, Plaintiff has adequately alleged that the force used against him was deployed "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. "[I]f force is applied maliciously and sadistically[,] liability is not avoided simply because the prisoner had the good

fortune to escape serious harm." *Washington*, 223 F. Supp. 3d at 461 (citing *Wilkins*, 559 U.S. at 38). For these reasons, Count II adequately states a claim against defendants Fleming, Sparrow, and Patterson.

But the allegations of Count II are insufficient to state a claim against any other defendant named in Plaintiff's narrative description of Count II. (Second Am. Compl. pg. 2 ¶ E & pgs. 4–5.) The only allegation against Turner is that he failed to escort a prisoner to the top tier, releasing him instead into the lower tier where the inmate ultimately started a fight with Plaintiff. There is no allegation that Turner knew a fight was imminent or had any role whatsoever in its instigation or resolution. Likewise, the only allegation against Vies is that he escorted Plaintiff to medical after the fight. There is no allegation that he had any other interaction with Plaintiff at any time.

Finally, Plaintiff makes a passing reference in Count II to Capt. McCoy's failure to keep him safe but, as explained above, there is no allegation that Capt. McCoy was aware of any threat to Plaintiff's health or safety by these officers at any time before the incident in question. And although Plaintiff makes a conclusory allegation to tie Lt. Edwards's threat (from two months prior) to the incident in the medical unit, conclusory statements are insufficient to state a claim. *See* Fed. R. Civ. P. 12(b)(6); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("This approach recognizes that 'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)). Plaintiff does not allege that Lt. Edwards colluded with, spoke with, or even *knew* the officers who responded to his cell in the medical unit. As such, Plaintiff's conclusory allegations lack the bare minimum of factual

support—even granting the deferential standard of review on a motion to dismiss—to state a claim against Capt. McCoy or Lt. Edwards.

## IV.

Separate and apart from the motion to dismiss, Plaintiff has filed a motion seeking a transfer to another facility. (ECF No. 35.) Plaintiff claims that the officers at Haysi Regional Jail are "looking to make up disciplinary charges to put [him] in SHU-8B . . . ." (*Id.*) He also claims that he is bring written up more frequently, apparently in retaliation for the present lawsuit.

The court will deny Plaintiff's motion, as he has no right to be housed in a facility of his choosing. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 223–224 (1976); *Vandross v. Perry Corr. Inst.*, No. 8:21cv029, 2021 WL 1430959, at *3 (D.S.C. Jan. 8, 2021); *Dalton v. W. Va. Div. of Corr.*, No. 08-8188, 2009 WL 550178, at *1 (4th Cir. Mar. 5, 2009) (slip opinion) (affirming denial of a preliminary injunction that sought a transfer to another facility because "a prisoner has no due process right to be housed in the facility of his choice" (citing *Meachum*, 427 U.S. at 223–24)); *Williams v. Mathena*, No. 7:10cv404, 2010 WL 4974968, at *1 (W.D. Va. Dec. 2, 2010). Insofar as Plaintiff believes his rights are being violated in retaliation for filing the present suit, he may file a separate action addressing those allegations once he has exhausted his administrative remedies.

## V.

For the reasons discussed above, Plaintiff's complaint adequately alleges a cause of action for excessive force in violation of the Eighth Amendment against defendants Fleming,

Sparrow, and Patterson. All other claims will be dismissed for failure to state a claim. Plaintiff's motion to be transferred to a different facility will also be denied.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 1st day of February, 2022.

>  */s/ Thomas T. Cullen*
> HON. THOMAS T. CULLEN
> UNITED STATES DISTRICT JUDGE